EDWARD L. POTWINE'S APPEAL FROM PROBATE.

Whether a court of probate has power to annul a decree previously made accepting and allowing an administration account: *Quere.*

A court of probate upon the petition of a residuary legatee passed a decree anulling a former decree allowing the account of the executor, and found as a fact upon which the annulling decree was based, that in the printing of the notice of the settlement of the account in a newspaper under the order of the court, the name of the deceased was erroneously printed *Hendee* instead of *Hender,* and that therefore no notice was published according to the order of the court, and that the petitioner was not notified. The decree was reversed on the ground that it did not appear by the record that the petitioner was injured by the settlement of the account complained of, nor that he was not present at the settlement or had not actual knowledge of it.

Courts of probate being of special and limited jurisdiction, there is no presumption of law to sustain their decrees, and their records must show an explicit finding of all necessary jurisdictional facts.

The term "notified," as generally used in legal proceedings, imports a formal notice given by order of the court or according to law, and not mere knowledge on the part of the person notified.

APPEAL from a decree of the court of probate of the district of Hartford revoking and annulling a previous decree accepting and allowing the account of the appellant as executor of the will of Thomas Hender.

The decree appealed from was as follows:

"At a probate court holden at Hartford in and for the district of Hartford, on the 10th day of March, A. D. 1862. Present Heman H. Barbour, judge. Estate of Thomas Hender, deceased. Upon the petition of Thomas H. Wales, a residuary legatee under the will of said deceased, praying this court to revoke and set aside the order of this court, passed March 20th, 1861, accepting and allowing the second account of the executor of said will, upon the ground that no notice of the exhibition and hearing of said account was ever published or given according to the order of this court, or in any manner given to said petitioner, which petition is on file dated February 26th, 1862, and notice of the pendency and hearing of said petition having been given according to the order of this court: This court finds that by error of the types the name of the deceased was printed 'Hendee' instead of 'Hender,' in

the notice which was ordered to be published for the settlement of said account, and that therefore no notice was published according to the order of this court for the exhibition and hearing of said account, and that the petitioner was in no manner notified thereof. Whereupon it is ordered and decreed that the order of this court, made on the 20th day of March, A. D. 1861, accepting and allowing the second account of said executor, be revoked and abolished."

The case was heard in the superior court before *Waldo, J.*, and the decree affirmed. The appellant then brought the record before this court by motion in error.

*Goodman*, for the plaintiff in error.

*Cornwall*, for defendant in error.

BUTLER, J. Courts of probate are not expressly authorized to grant new trials. They possess such incidental and implied powers, legal and equitable, as are necessary to the entire performance of all the duties imposed on them by law; and so far as it is *necessary* that they should annul or modify any of the orders made during the settlement of the estate without notice or hearing, and required to prepare the estate for final settlement and distribution, the power to do so may exist by necessary implication. But we are not all satisfied that it is *necessary*, or was contemplated as possible, that they should possess such power in respect to the final decree adjusting and closing the administration account. That decree has all the elements of a final judgment. It determines conclusively, unless appealed from, the rights of the administrator or executor in respect to his charges and disbursements, and those of the heirs and legatees in respect to his receipts and the performance of his duties; and it fixes the basis of a sale of the estate, so far as required to pay debts, and for a final distribution of the surplus. An appeal is allowed from that decree; but an early closing and distribution of the estate are important, and that appeal is, for that reason, carefully limited. If the implied equitable power to annul that decree exists as claimed, it is wholly without regulation or limitation, and may be exer-

cised after the right of appeal is gone, as in this case, or irrespective of that right and at any indefinite period; and the sale of the estate, the payment of debts, and the distribution of the surplus estate, be overturned thereby. Nor is it easy to distinguish between the exercise of such a power and the granting of new trials by other courts in other cases. As, however, there is some diversity of opinion on this point, and a determination of it is not necessary to a disposition of the case, we do not place our decision on that ground.*

Courts of probate have a special and limited jurisdiction. Their proceedings can not be sustained by presumption, and their records must show an explicit finding of all necessary jurisdictional facts. We are all satisfied that if the equitable power to pass the decree appealed from should be conceded, the facts found did not warrant its exercise. The equitable power to grant new trials is never exercised unless the party applying for it has been injured, and is wholly without negligence or fault. The petitioner properly alleged in his petition that he was injured in the settlement of the account complained of; but that essential fact was not found by the court, and that is a fatal omission. Nor does it appear with sufficient certainty that the petitioner had not actual knowledge of the time when the account was to be settled; and the entire proceeding has a mere technical aspect on the record. All that the petitioner avers in his petition on that point is, that " no notice was ever given to the petitioner or any other person or persons whatever of the time, place," &c. That averment looks to the fact that the notice was no notice by reason of the mistake, and does not exclude the idea that he and other per-

---

* Since the above case was decided the case of *Pettee* v. *Wilmarth,* 5 Allen, 144, has appeared, in which it is held that "a judge of probate has no authority to revoke a decree passed by himself making an allowance to a widow out of her husband's estate and to pass a new decree allowing her a less sum." Metcalf, J. says: "Though the judge had authority, on good cause being shown, to decree to the widow an additional allowance, we know of no authority which he had to rescind the decree that he had already made. If he could rescind his first decree he might rescind the second, and so on indefinitely; and there could be no certainty that any decree had finally established any party's rights, but every person in whose favor a decree had been obtained would hold it precariously at the discretion of the judge who passed it." R.

sons interested had, nevertheless, actual knowledge. The court recite the averment of the petition thus: " No notice, &c., was ever published or given according to the order of this court, or in any manner *given to* said petitioner," and find that by error in the types the name was printed Hendee instead of Hender, "and *therefore* no notice was published according to the order of this court for the exhibition and hearing of said account, and that the petitioner was in no manner *notified* thereof." In legal proceedings and in respect to public matters the word *notified* is generally if not universally used as importing a notice *given* by some person, whose duty it was to give it, in some manner prescribed, and to some person entitled to receive it, or be notified. And such is its obvious import in the finding of the court. It is a mere finding (in other terms,) that the averment of the petition as recited is true. Prior to 1824 no notice whatever was required to be given by law; and now it is discretionary with the court to direct it to be given "by publication or *otherwise;*" and all that the record imports is, that the petitioner was not notified—notice was not *given* him—by publication or *otherwise*. The finding may have been perfectly and fully true, therefore, upon that point, and yet the petitioner may have known the fact, and been guilty of laches in not attending, and therefore not entitled to the relief sought.

There is manifest error in the record.

In this opinion the other judges concurred.